# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **ELIZABETH DAVIS BATTON, PATRICK DAVIS BATTON, JEFF DONOVAN BATTON, PHILLIP RANDALL BATTON** | * | **CIVIL ACTION NO. 05-1219** |
| | * | |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **UNITED STATES OF AMERICA** | | |

## MEMORANDUM RULING

Before the court are cross motions for Summary Judgment filed by plaintiffs, Elizabeth Davis Batton, Patrick Davis Batton, Jeff Donovan Batton, and Phillip Randall Batton ("Battons" or "Plaintiffs") (Document No. 7) and the United States of America ("Government") (Document No. 13). For reasons stated below, both motions are **GRANTED in Part and DENIED in Part**.

## BACKGROUND

This action arises out of a dispute over the Battons' access to their property, which is specifically described as Lots 6 and 7 of Section 10 and Lots 3, 4, 6, 7, 13, 14 and 15 of Section 11, all in Township 14 North, Range 10 East, Madison Parish, Louisiana ("Batton Property"). The Batton family has owned the Batton Property since purchasing it through a series of transactions which took place in 1955 and 1956. It is undisputed that the property is completely enclosed, that the Battons are the owners of the property, and that the Batton Family has accessed the property for more than forty years by means of a dirt road or trail which runs through a portion of what is now the Tensas River National Wildlife Refuge ("Tensas Refuge"). The Government acquired the property through which the dirt road or trail runs in 1984 and now, through the Department of the Interior, owns and operates it as part of the National Wildlife Refuge System.

The Batton Property, which contains a house equipped with a full kitchen and heating

source, is used primarily for hunting and recreation, with occasional timber-related activity. The nearest public road, Madison Parish Road G19, is accessible only through the unimproved dirt and wooded way which runs through the refuge and which is the subject of this suit.[1] Although the Battons have used this way for over forty years to access their property, neither their deeds nor the deeds to the surrounding property from the predecessors in title to the Government expressly include any outstanding easements or servitudes of passage in favor of the Battons.

In 2004, a dispute developed between the Battons and the Tensas Refuge relating to restrictions the Refuge placed on the Battons' use of the access path. The Refuge notified the Battons that use of the access path would be restricted to certain types of all-terrain vehicles from September 15th of each year through May 31st of the following year, and that any automobile access during these periods would require prior approval from the Refuge manager and would be evaluated on a case-by-case basis.

The Battons objected to the restrictions, arguing that limiting use of the access path to all-terrain vehicles would effectively deny access to elderly and very young members of the Batton family, seriously impede any repairs to the property, and interfere with the Battons' use of the property for timber. The Battons offered to assume responsibility for maintenance of the pathway as a means of addressing the Government's concern about damage to the Refuge property caused by use of the access path.

The parties were unable to reach an agreement regarding use of the access path, and in July 2005, the Battons filed this action against the Government pursuant to the Quiet Title Act

---

[1] The Battons refer to the pathway as a dirt road, while the Government, pointing to photographs submitted with its motion, state that it is nothing more than an overgrown trail. The Government's photographs, while showing some overgrown vegetation and small downed trees, also show a pathway wide enough and clear enough to accommodate vehicles such as the pickup trucks used in obtaining the photographs.

("QTA"), 28 U.S.C. § 2409a, seeking (1) a declaration that they own a predial servitude of passage along the access path from their property to Madison Parish Road G19, and (2) a permanent injunction prohibiting the Government from interfering with their use of the servitude.

The Battons claim the right to a servitude under articles 689 and 705 of the Louisiana Civil Code. Though the Battons acknowledge the Government's ability to restrict access to the path, they maintain that as owners of the dominant estate, they are entitled to access "reasonably necessary for the use of the enclosed estate" and, based on the varied use they make of their property, they claim that the access must include the ability to use automobiles. Pl.s' Brief, p. 6.

In opposition, the Government has filed a cross motion seeking dismissal of several of the Battons' claims for lack of jurisdiction and summary judgment on the others. According to the Government, the QTA does not cover the Battons' suit because it cannot be used as a basis for establishing a right where none previously existed. The Government argues that La. C.C. Art. 689 does not give the Battons such a right because it has been preempted by federal law that authorizes the Secretary of the Interior to grant road easements over refuge lands.

As for the other basis of the Battons' claim, La.C.C. Art. 705, the Government claims that the Battons can only obtain a predial servitude through acquisitive prescription, and, because acquisitive prescription does not run against land owned by the United States, the Battons must demonstrate ownership through acquisitive prescription prior to the Government's purchase of the land in 1984. This, the Government argues, is impossible under Article 742 of the Louisiana Civil Code, as amended, and the undisputed facts of this case.

Finally, the Government claims that a permanent injunction prohibiting it from restricting the Battons' use of the access road would violate the QTA, conflict with the Government's inherent power to regulate federal property, and be premature because the Battons' challenge to

the restrictions is governed by the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq*.

## LAW AND ANALYSIS

Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Jurisdiction Over Plaintiffs' Claims

As the jurisdictional issues are threshold ones, they will be examined first.

**A. Quiet Title Act and Sovereign Immunity**

Generally, under the doctrine of sovereign immunity, the United States may not be sued except to the extent that it expressly waives its immunity. *Sims v. United States*, 867 F.Supp. 451, 452 (W.D. La. 1994). In the QTA, 28 U.S.C. § 2409a, Congress waived sovereign immunity to the following extent: "The United States may be named as a part defendant in a civil action under this section to *adjudicate a disputed title to real property in which the United States claims an interest*." § 2409a(a) (emphasis added). Citing *Barnes v. Babbitt*, 329 F.Supp.2d 1141 (D. Ariz. 2004), the Government claims the QTA's waiver of sovereign immunity does not apply to the Battons' claim because "the property right sought to be vindicated by a plaintiff under the QTA must exist at the time the action is brought." Govt.'s Brief, p. 7.

Article 689 of the Louisiana Civil Code, which governs servitudes of passage for enclosed estates, is not self-executing. It does however confer on the owner of an enclosed estate a **legal** servitude on the subordinate property which entitles the owner to a forced passage for indemnity. The enclosed landowner has the right to go into court and demand that the passage be fixed, and the establishment of the location of the right of way either through agreement or by judicial decision, is a **conventional** servitude of passage. *See* La. Civ. Code Ann. art. 689; A. Yiannopoulos, 4 *Louisiana Civil Law Treatise, Predial Servitudes* § 92 (3rd ed. 2004). Thus, while the location of the passage has not yet been fixed, the Batton's right to such a passage exists by operation of law, and the Battons may avail themselves of the QTA's waiver of sovereign immunity.

Furthermore, as the Battons point out, 28 U.S.C. § 1346(f), provides that district courts shall have exclusive jurisdiction of actions under the QTA. The case law and legislative history

5

of the QTA specifically discuss how disputes over easements, such as the one at issue here, are included in the QTA's waiver of sovereign immunity. *See Kinscherrf v. United States*, 586 F.2d 159, 161 (10th Cir. 1978); *Burdess v. United States*, 553 F. Supp. 646, 648-9 (E.D. Ark. 1982); H.R. Rep. 92-1559 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 4547, 4552-3.

The plaintiffs also note, with respect to the Government's reliance on *Barnes* for the proposition that plaintiffs can sue under the QTA only if they have a judicially decreed right or title in the disputed property, that, if it indeed stands for the proposition that the right or title must be judicially decreed to be enforceable under the QTA, *Barnes* failed to support this point with case law or legislative history. Furthermore, given the exclusive jurisdiction the QTA established in the federal courts, the Battons point out that applying the government's *Barnes* argument to the present case would create a "Catch-22": "[A plaintiff] cannot bring his suit in federal court unless the easement is already [established, yet] he cannot bring suit anywhere else to establish it." Pl.s' Reply, p. 4. Thus, the Battons would have a right without a remedy--surely a result that Congress could not have intended.

Finally, the holding in *Barnes*, which in any case is not binding on this court, is clearly distinguishable both on its facts (because it involved property which had other means of access to the public road), and on the law (because it involved interpretation of common law and Arizona statutes rather than Louisiana law). Thus, so long as Article 689 has not been preempted by federal law, the plaintiffs' right to an easement exists as a matter of law under the undisputed facts of this case.

### B. Preemption

The Government claims that Article 689 is preempted by federal law, specifically by the National Wildlife Refuge System Administration Act of 1966 ("NWRSA"), 16 U.S.C. § 668dd,

6

as amended. Subsection (d) of the NWRSA authorizes the Secretary of the Interior to:

> grant easements in, over, across, upon, through, or under any areas within the [National Wildlife Refuge] System for purposes such as but not necessarily limited to, powerlines, telephone lines, canals ditches, pipelines, and roads, including the construction, operation, and maintenance thereof, whenever he determines that such uses are compatible with the purposes for which these areas are established.

§ 668dd(d)(1)(B). The Secretary, however, cannot merely give easements away; he is required to obtain compensation, whether it be in a lump sum payment, rental payment, or some other form. *See* § 668dd(d)(2). The Government contends that the empowerment of the Secretary to grant easements preempts a private citizen's right to seek a servitude of passage under Louisiana law. The undersigned disagrees.

The Government argues that the Secretary's authority under section 668dd(d)(1)(B) applies to all easements, those existing under law and those sought directly from the Secretary; however, a plain reading of it and other subsections demonstrates that it only governs non-judicial requests for easements. Section 668dd(d)(1)(B), on its face, does not address the Secretary's power to grant or deny easements when state law clearly states that the right to one already exists. Instead, the section merely states that the Secretary may grant easements when their uses, of which it provides several examples, are compatible with the purposes of the relevant National Wildlife Refuge. The statute says nothing about preemption of state law, and is not inconsistent with a requirement that the Secretary recognize an easement the right to which pre-existed the government's ownership of the subservient estate and which state law clearly grants to a dominant landowner.

If Congress meant to preempt state law in this case, then it could easily have done so by using language stating that any state laws granting easements were preempted; it could at the very least have drafted the NWRSA so that it was in conflict with the laws it sought to preempt.

7

As it stands there is simply no basis for a holding that Article 689 is preempted by the NWRA.

For the reasons stated above, the Government's motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

### C. Choice of Law

The Government relies on *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580 (1973), for its claim that applying Article 689 in this case "would subvert the plenary authority that Congress possesses over federal lands and is not the type of law that is 'chosen' as a rule of decision in a federal court proceeding." Govt.'s Brief, p. 8. In *Lake Misere*, the United States Supreme Court created an exception to the general rule, as set out in *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378-9 (1977), that federal courts follow state law rather than federal law in resolving real property disputes. In *Lake Misere*, the United States had acquired title to land located in Louisiana pursuant to the Migratory Bird Conservation Act, both by purchase and condemnation. *Lake Misere* at 582. The land acquisition agreements, however, reserved mineral rights to various vendors for up to 10 years, and longer if certain conditions were met. *Id.* at 582-3. After ten years passed and the vendors failed to meet the relevant conditions, the vendors nevertheless continued to claim mineral rights pursuant to a recently enacted Louisiana law, Act 315, that retroactively made mineral rights imprescriptible. *Id.* at 584.

The Court, while recognizing the general applicability of state real property laws in federal court, nevertheless declined to apply Act 315 retroactively to deprive the United States of its bargained-for contractual interests and stated that "specific aberrant or hostile state rules do not provide appropriate standards for federal law." *Id.* at 596. In expounding on the type of "aberrant and hostile" rules that it had declined to apply in the past, the Court noted how those

rules would often utilize definitions "'entirely strange to those familiar with [the words'] ordinary usage,'" *id.* (quoting *De Sylva v. Ballentine*, 351 U.S. 570, 581 (1956)) and would "'effect a discrimination against the Government, or patently run counter to the terms of [federal legislation].'" *Id.* (quoting *RFC v. Beaver County*, 328 U.S. 204, 210 (1946)).

The Government's reliance on *Little Lake Misere Land Co., Inc.* is misplaced. Unlike Act 315, which retroactively sought to make mineral rights imprescriptible against the United States, Act 689, which was in effect long before the Government's acquisition of the property in question in this case, grants the owner of an enclosed estate a legal servitude of passage over neighboring land which encloses it. The Bratton's legal servitude was already in existence at the time of the sale, and the road or path they were using at the time of the sale was apparent. Thus, the Government should not be surprised that the Brattons continue to claim their right of passage, or that they seek to fix that right at the place which they have been using for such passage for more than 40 years. Given that laws similar to Article 689 exist in nearly every state, it can hardly be called "aberrant or hostile."

Additionally, the access and utility Article 689 provides to private lands are clearly legitimate and important state interests and further distinguishes Article 689 from Act 315. The right of access to enclosed lands is in the public interest because it prevents such lands from becoming, for all practical purposes, useless. *See, LeBlanc v Thibodeaux,* 615 So.2d 295, 299 (La. 1993) (recognizing the "strong public policy of this state which is to discourage landlocking.," and noting that landlocking forever removes a valuable asset from commerce and from public as well as private benefit.) Article 689 is not aberrant, hostile, or discriminatory, and, therefore, is the governing law in this case. The Government's motion to dismiss based on the inapplicability of Article 689 is **DENIED.**

9

Predial Servitudes of Passage under Article 705

The Government also moves for summary judgment on the Battons' claim for a servitude of passage under Article 705 of the Louisiana Civil Code, on the grounds that the servitude did not arise by acquisitive prescription, as required under Article 740. Article 705 is located in the chapter of the Louisiana Civil Code entitled "Conventional or Voluntary Servitudes."[2] Article 740, which describes how conventional servitudes are acquired, states that they may be "acquired by title, by destination of the owner, or by acquisitive prescription." La. Civ. Code Ann. art 740. As the Battons do not claim acquisition by title or destination, the Government focuses on acquisitive prescription. To the extent that the Battons assert Article 705 as a basis for a servitude of passage, the Government's two reasons for summary judgment are correct: (1) land owned by the United States cannot be acquired through prescription, *see* 28 U.S.C. § 2409a(n); *Pavell v. Berwick*, 48 F. Supp. 246, 248 (W.D. La. 1943); and (2) the prescription periods - ten years with just title and thirty years without - have not been satisfied for the period prior to the Government's acquisition.[3] Therefore, the Government's motion for summary judgment on the

---

[2] Article 705 provides:
The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate.
La. Civ. Code Ann. art. 705.

[3] The undersigned notes that the methods of acquisition listed in Article 740 do not restrict or affect the Battons' claim for a servitude of passage under Article 689. Articles 705 and 740 deal with conventional and voluntary servitudes; Article 689, conversely, deals with legal servitudes. The distinction between the two is determinative. Unlike a conventional servitude, which is, as Article 740 indicates, acquired voluntarily or acquiescently, "[a] legal servitude is a limitation on ownership imposed by law. The legal servitude of passage in favor of an enclosed estate is a limitation imposed by law on the ownership of lands surrounding the enclosed estate." *Dallas v. Farrington*, 490 So.2d 265, 270 (La. 1986) (internal citations omitted). Thus,

Battons' claim based on La.C.C. Article 705 is **GRANTED.**

Reasonableness of the Government's Access Restrictions

Both the Government and the Battons seek summary judgment on the reasonableness of denying the Battons' use of automobiles on the access road between May 31 and September 15.

The Government argues that the Battons' claim for an injunction should be denied because, under section 2409a(b) of the QTA, "[t]he United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days." *See Down Stone Co. v. United States*, 651 F.2d 1234, 1243 (7th Cir. 1981) (reversing the district court's grant of a preliminary injunction against the government). However, a review of the QTA shows that the ban applies only while an action is pending; thus, while it forbids preliminary injunctions, it does not prevent permanent injunctions granted on the merits. The Battons are not seeking a preliminary injunction, and the QTA does not preclude the Battons' request for a **permanent** injunction prohibiting the Government from banning the use of automobiles on the access path.

The Government also argues that the Secretary of the Interior, pursuant to congressional authorization, may impose limitless access regulations on private property in order to protect federal lands. Again, the undersigned disagrees. The Secretary's authority, while broad, is adjudged according to whether the regulation of private property is reasonable. *See Skranak v. Castaneda*, 425 F.3d 1213, 1216-7 (9th Cir. 2005) (stating government, with respect to private easements, has right to reasonable use of its land); *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005) (same); *Montana Wilderness Assoc. v. United States Forest Service*, 496 F. Supp. 880,

---

acquisitive prescription is irrelevant to servitudes that the law imposes.

889 (D. Mont. 1980) (stating access limitation limited to what private owner needs for "reasonable enjoyment" of property). The Battons' claim properly challenges the reasonableness of the Secretary's access limitations.

The Government's final argument for summary judgment concerns the application of the APA to the Battons' claims. According to the Government, the reasonableness of its restrictions is a matter for determination under the APA and, because the Battons have not exhausted their administrative remedies, the Court should remand the matter for further administrative proceedings. However, as the Battons note, filing a claim under the QTA is the exclusive means for challenging federal title to real property, *see Block v. North Dakota*, 461 U.S. 273, 286 (1983), and numerous courts have held that the APA does not apply to claims filed pursuant to the QTA. *See, e.g., Mafrige v. United States*, 893 F. Supp. 691, 699 (S.D. Tex. 1995); *Town of Beverly Shores v. Lujan*, 736 F. Supp. 934, 944 (N.D. Ind. 1989). Additionally, even if the APA did apply to this case, the Battons' failure to exhaust their administrative remedies would be excused as futile. *See Taylor v. United States Treasury Dep't, IRS*, 127 F.3d 470, 477 (5th Cir. 1997). The Government's various responses to the Battons' correspondence demonstrates that while some negotiation may be possible, the Government has taken a firm stand that it will not permit the Battons to use automobiles on the access path during most of the year. *See Brown v. Secretary of HHS*, 46 F.3d 102, 114-5 (1st Cir. 1995) (futile where it appears that the agency has "taken a firm stand"); *Able v. United States*, 88 F.3d 1280, 1289 (2d Cir. 1996) (futile where there is "no realistic possibility" that agency will change its position).

Because the Battons' claim for recognition of their easement under Article 689 and challenge to the Government's access restrictions are properly before this court, the undersigned next considers the Battons' motion for summary judgment. First, the following key facts are

undisputed: (1) the Battons' property is an enclosed estate; (2) the nearest public road is Madison Parish Road G19; (3) the only access to this road is through a path that crosses the Government's property; and (4) the Battons are willing to indemnify the Government for any damage caused to the access path and have offered to maintain the path. Based on these facts, the plaintiffs' motion for summary judgment is **GRANTED** to the following extent: (1) the Battons' legal servitude of passage under Article 689 is hereby recognized; (2) the servitude of passage must provide access to Madison Parish Road G19; and (3) the servitude of passage burdens the Government's property. *See* La. Civ. Code Ann. art. 689.

The only remaining question deals with the scope of the servitude and the reasonableness of the restrictions the Government seeks to impose. Article 690 of the Louisiana Civil Code provides that "[t]he right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate." La. Civ. Code Ann. art. 690; *Davis v. Culpepper*, 794 So.2d 68, 71 (2001). Similarly, the Government may restrict use of private property only to the extent that the private individual maintains "reasonable enjoyment" of his property. *See Montana Wilderness Assoc.*, 496 F. Supp. at 889. While the undersigned understands the Government's desire to protect the vegetation and wildlife surrounding the access path, the burdens on the plaintiffs created by the almost nine-month prohibition of automobiles is unreasonable. As the Battons' point out, depriving them of automobile use and limiting them to all-terrain vehicles would seriously interfere with any repairs or provisioning of their house, transportation of the elderly and young family members, and their general use and enjoyment of their property. Furthermore, the Government's submitted pictures of the trail indicate that it is at least wide enough to accommodate mid-size pick-up trucks, and it has not submitted any evidence of damage from prior use of automobiles. It is clear

that restricting the Battons' use of automobiles on the servitude for most of the year substantially interferes with their use and enjoyment of their property and does not permit the "kind of traffic that is reasonably necessary for the use of that estate."

However, the government's needs must also be considered in addressing the use of the right of way. There are issues of fact remaining as to what restrictions the government may impose which will adequately protect its interests but still allow the Battons reasonable access to their property. Therefore, for the reasons stated above, the Government's motion for summary judgment on the Battons' right to an injunction is **DENIED**, and the Battons' motion for summary judgment on their right to a permanent injunction is **GRANTED. However, although a nine-month restriction on the use of automobiles is unreasonable, there are issues of fact regarding what restrictions the Government may reasonably impose on the Battons' use of the access path, and the Battons' motion for summary judgment that issue is therefore DENIED.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of March, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE

H:\Easements & Servitudes\05-1219.030806.mrj.klh.frm