# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **ELIZABETH DAVIS BATTON, PATRICK DAVIS BATTON, JEFF DONOVAN BATTON, PHILLIP RANDALL BATTON** | * * | **CIVIL ACTION NO. 05-1219** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **UNITED STATES OF AMERICA** | | |

## MEMORANDUM RULING

Before the court is a Motion for Reconsideration and Clarification filed by defendant, United States of America ("Government"). (Document No. 20). Plaintiffs, Elizabeth Davis Batton, Patrick Davis Batton, Jeff Donovan Batton, and Phillip Randall Batton ("Battons" or "Plaintiffs"), oppose the Government's motion. (Document No. 24). For reasons stated below, the Government's motion is **DENIED.**

## BACKGROUND

This action arises out the Government's attempt, through the Fish and Wildlife Service ("Service"), to impose certain restrictions on the Battons' use of a path located on the Tensas River National Wildlife Refuge ("Refuge"). The path, which the Battons have freely used for over forty years, represents the only means of access to their property that is completely enclosed by the Refuge. Invoking the Court's jurisdiction under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, the Battons alleged ownership, pursuant to Louisiana property law, of a predial servitude of passage along the path; in their motion for summary judgment, they sought a declaration of their ownership and a permanent injunction prohibiting the Government from imposing unreasonable access restrictions. The Government, in its cross motion, asserted several jurisdictional and procedural challenges to the Battons' claims and claimed that an injunction would violate the QTA, conflict with its inherent power to regulate federal property, and would

be premature because the Battons' claim was governed by the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*

In a ruling dated March 8, 2006, the Court granted and denied both motions in part. The Court found that Congress waived sovereign immunity in the QTA, that Louisiana law regarding predial servitudes was not preempted by federal law, and, consequently, that Louisiana property law provided the rules of decision. Turning to the merits of the case, the Court granted the Battons' motion for summary judgment in part, finding that they were owners of a legal servitude of passage along the Refuge path from their property to the nearest public road. Recognizing, however, the role of "reasonableness" in determining the scope of the servitude and permissible restrictions of its use, the Court found that issues of fact remained as to both questions and denied the Battons' motion for summary judgment in part.

As the Government now concedes the Battons' ownership of a predial servitude along the path, its current motion for reconsideration is limited in scope:

> The United States . . . seeks reconsideration and clarification on the issue of the [Fish and Wildlife] Service's authority to require the Battons to obtain a permit to enter the Tensas River National Wildlife Refuge and the applicability of the Administrative Procedures Act to the Service's agency action with respect to such a permit.

Govt.'s Motion, p. 2. In its brief, the Government adopts a tripartite analysis, beginning with the general question of Congress' constitutional authority to regulate private property, then proceeding to whether Congress delegated this authority to the Service, and finally asking whether, in this case, the Service properly exercised that authority over the Battons. Answering these inquiries in the affirmative, and urging the Court to do the same, the Government concludes that the reasonableness of the Service's restrictions is an administrative question subject to the APA and that, consequently, the Battons failed to exhaust their administrative

remedies. The Government raised each of these arguments and claims in its initial cross motion in this case.

## LAW AND ANALYSIS

Standard of Review for Motions for Reconsideration

Although the Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration," courts treat such motions as similar to motions to alter or amend judgment under Rule 59(e), provided they are filed within ten days of entry of judgment. *See Bass v. United States Dep't of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000). The Government's present motion was filed within ten days of judgment and thus will be treated as a motion to alter or amend under Rule 59(e).

The United States Court of Appeals for the Fifth Circuit has summarized the narrow inquiry and extraordinary request associated with motions under Rule 59(e):

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (internal citations and quotation marks omitted). As the above language demonstrates, a court possesses broad discretion in deciding whether to alter or reopen its prior judgment. *See Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir. 1990).

Despite the Government's lengthy elaboration of its tripartite analysis, it arrives at the same basic conclusion set forth in the Court's prior ruling: "the Service may impose reasonable limitations on the use of a private interest, such as an easement, in order to protect the refuge

3

resources in peril, but not to the extent that the private interest is taken or subject to unreasonable burdens." Govt.'s Brief, p. 13; *see* Doc. No. 18, p. 13 ("The only remaining question deals with the scope of the servitude and the reasonableness of the restrictions the Government seeks to impose."). None of the cases the Government cites in its brief depart from this premise. *See, e.g., McFarland v. Norton*, 425 F.3d 724, 726-7 (9th Cir. 2005)*; Adams v. United States*, 3 F.3d 1254, 1258-9 (9th Cir. 1993); *Fitzgerald v. United States*, 932 F. Supp. 1195, 1201-2 (D. Ariz. 1996); *Montana Wilderness Assoc. v. United States Forest Service*, 496 F. Supp. 880, 889 (D. Mont. 1980) ("the United States, as the holder of the servient tenement, has the right to limit the location and use of Burlington Northern's easement of access, to that which is necessary for Burlington Northern's reasonable enjoyment of that right."), *aff'd in part, rev'd in part,* 655 F.2d 951 (9th Cir. 1981), *cert. denied,* 455 U.S. 989. Thus, to the extent that the Government's motion urges reconsideration of the involvement of "reasonableness" in its restrictions, it is **DENIED.**

Furthermore, to the extent that the Government requests clarification on its ability to require the Battons to obtain an access permit, the Court reiterates that the only remaining issue in this case is the reasonableness of the Government's restrictions. The Court's prior ruling in no way precludes or restricts the Government from requiring the Battons to apply for or obtain an access permit. As the Government notes, this requirement is permitted by statute and regulation. *See generally* 16 U.S.C. § 668dd(d)(1)(A); 50 C.F.R. §§ 26.11-26.41; 35.13.[1] A permit and the

---

[1] As the Battons correctly note, Part 26 of the Service's regulations, the section dealing with permits, applies to public, not private, use of a National Wildlife Refuge. The Battons possess a private predial servitude and therefore are not covered under this section; however, Part 35 contains a section governing use of and access to lands surrounded by a refuge and permits the Service to issue permits. Section 35.13 provides, in its entirety:
> Rights of States or persons and their successors in interest, whose land is surrounded by a wilderness unit, will be recognized to assure adequate access to

4

restrictions attached thereto, however, must be reasonable in light of both the Battons' right to use and enjoy their private land and the Service's obligation to protect and preserve the Refuge; it must fall within the parameters set by this Court.

Having found that the Battons possessed a legal servitude across the Government's land, the Court has in part defined the scope and breadth of that servitude, as it was obligated to do under Louisiana law. *See* La. Civ. Code art. 690 (providing that "the right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate."). The Court found that the route which has been in use for over forty years is the shortest one, and found that the Government's nine-month prohibition of automobile use on the path would seriously interfere with the Battons' reasonable use and enjoyment of their property. As to other permissible restrictions and the full extent of the servitude, the Court found that numerous issues of fact existed; for instance, the extent to which the Battons' use of the path would or has caused damage to it and the surrounding vegetation or wildlife. Additional evidence was required on these issues. Thus, the Court denied the Battons' motion for summary judgment in part.

Applicability of APA

The Government reasserts its argument that the Battons' challenge to the Service's

---

> that land. Adequate access is defined as the combination of modes and routes of travel which will best preserve the wilderness character of the landscape. Mode of travel designated shall be reasonable and consistent with accepted, conventional, contemporary modes of travel in said vicinity. Use will be consistent with reasonable purposes for which such land is held. The Director will issue such permits as are necessary for access, designating the means and route of travel for ingress and degress so as to preserve the wilderness character of the area.

50 C.F.R. § 35.13.

restrictions is governed by the APA, and because the Battons have not exhausted their administrative remedies, the Court should remand the matter to the Service for further administrative proceedings. The Government cites several cases involving private access to federal lands that either explicitly invoked the APA or contained the operative phrase "arbitrary and capricious." From these cases, the Government draws the conclusion that "if one wishes to contest the manner in which one's rights are being regulated, such as the requirements placed in a permit, an action under the Administrative Procedures Act is required." Govt.'s Brief, p. 14. To the extent that a person is indeed challenging only the Service's regulations, the Court agrees with the Government's statement. That, however, is not the case here.[2]

The Battons filed suit solely under the QTA -- the exclusive means for challenging

---

[2] The cases the Government cites for support of its argument regarding the APA are inapposite. First, in *Fitzgerald v. United States*, 932 F. Supp. 1195 (D. Ariz. 1996), the court denied the plaintiffs' claim of a common law easement across federal lands on the merits and thus was not required to decide whether the government's restrictions on the putative easement were subject to the APA. 932 F. Supp. at 1203. The discussion of the APA that did appear in the case related to the plaintiffs' claim of an easement under federal statute, not state law. *Id.* at 1204-5. Second, *United States v. Jenks (Jenks I)*, 22 F.3d 1513 (10th Cir. 1994) and *United States v. Jenks (Jenks II)*, 129 F.3d 1348 (10th Cir. 1997), support a point contrary to the Government's assertion. There, the government initially sued an individual defendant who refused to apply for a special use permit in order to access his inholdings. *Jenks I*, 22 F.3d at 1517. The defendant filed a counterclaim under the QTA and sought a determination of his patent, common law, and statutory (but not state law) easement claims. *Id.* The district court denied defendant's counterclaim on the merits, but, for the sake of argument, discussed whether the terms of the permit were reasonable. *Id.* at 1518. At no point did the district court discuss the APA or the defendant's failure to exhaust his administrative remedies, nor did the Ninth Circuit, despite two appeals, do the same or admonish the district court for premature consideration of government's restrictions. While the Ninth Circuit, in *Jenks II*, stated in its discussion of the defendant's implied easement claim that the government's restrictions may at some point "constitute arbitrary and capricious conduct in violation of law," 129 F.3d at 1354, the Court is unwilling to accept this as an invocation of the APA when no mention of it was made in prior rulings or elsewhere in the decision.

federal title to real property[3] -- to quiet title in the access path that runs across a portion of the Refuge. Their suit was not solely a challenge to the Service's restrictions. Up until the Court's ruling, the Government consistently maintained that the Battons were not entitled to a servitude of any kind and that they had to abide by all of the Service's access restrictions.

The Battons' claim of ownership of a servitude under Louisiana law requires two inquiries. First, the Court must determine whether the claim of ownership is indeed valid. That is, under article 689 of the Louisiana Civil Code, whether the Battons own an estate that has no access to a public road. *See* La. Civ. Code Ann. art. 689. Second, if no access to a public road exists, the Court must determine the servitude's location, scope, width, and parameters. *See* La. Civ. Code Ann. art. 690, 692 (2005). This second inquiry requires the Court to consider and balance the type of traffic that is reasonably necessary for the Battons' use of their estate and the Service's legitimate need and desire to protect the Refuge. *See, e.g., Bailey v. McNeely*, 05-629, p. 18 (La. App. 3 Cir. 12/30/05); 918 So.2d 1124, 1131; *Davis v. Culpepper*, 34-736, p. 7-8 (La. App. 2 Cir. 7/11/01); 794 So.2d 88, 73-4; *Hardisty v. Young*, 98-607, p. 16-18 (La. App. 3 Cir. 10/28/98); 720 So.2d 811, 816-17 ("the trial court may consider locating the right of way so that it is least injurious to the servient estate"); *Watts v. Baldwin*, 95-0260, p. 14-15 (La. App. 1 Cir. 10/06/95); 662 So.2d 519, 524.

This balancing obviously requires the Court to evaluate the Service's proposed restrictions, and to set reasonable restrictions on the servitude should the parties be unable to do so by agreement. Accordingly, while the Service's nine-month restriction on automobile use was unreasonable given the submitted evidence, there are issues of fact regarding the servitude's

---

[3] *See Block v. North Dakota*, 461 U.S. 273, 286 (1983); *Mafrige v. United States*, 893 F. Supp. 691, 699 (S.D. Tex. 1995); *Town of Beverly Shores v. Lujan*, 736 F. Supp. 934, 944 (N.D. Ind. 1989).

scope and restrictions. Therefore, because Louisiana law, and by extension the QTA, necessitates an evaluation of the Service's access restrictions, the Battons' claim is not governed by the APA. The Government's motion for reconsideration of this issue is **DENIED.**

Failure to Exhaust Administrative Remedies

The Government reasserts its argument that the Battons failed to exhaust their administrative remedies under the APA, but fails to address the Court's finding that "even if the APA did apply to this case, the Battons' failure to exhaust their administrative remedies would be excused as futile." Doc. No. 18, p. 12; *see Taylor v. United States Treasury Dep't, IRS*, 127 F.3d 470, 477 (5th Cir. 1997); *Brown v. Secretary of HHS*, 46 F.3d 102, 114-5 (1st Cir. 1995); *Able v. United States*, 88 F.3d 1280, 1289 (2d Cir. 1996). The Government's motion for reconsideration on this issue is also **DENIED.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of May, 2006.

H:\Easements & Servitudes\05-1219.050906.mr.klh.frm

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

8